Entered: July 23rd, 2026
Signed: July 23rd, 2026



**LORI S. SIMPSON**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Luke Yun Suk Oh, | * | Case No. 25-19928-LSS |
| | * | Chapter 11 (Subchapter V) |
| Debtor. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>INDICATIVE RULING</u>

Before the court is the Objection to Creditor Jung's Application for Award of Attorney's Fees and Expenses [Dkt. No. 123] ("Motion to Reconsider"), filed by Debtor, Luke Yun Suk Oh, which is deemed a motion to reconsider the sanctions imposed against Debtor in the Order Denying Confirmation of Second Amended Plan (ECF 85), Dismissing Chapter 13 Case With Prejudice, and Granting Request for Reasonable Attorney Fees [Dkt. No. 92] ("Sanctions Order"), the Response [Dkt. No. 157], filed by Kyung Rim Jung, the Reply [Dkt. No. 158], Correction to Reply [Dkt. No. 159], and Second Correction to Reply [Dkt. No. 160], filed by Debtor, the Sur-Reply [Dkt. No. 161], filed by Ms. Jung, and the Rebuttal to Sur-Reply [Dkt. No. 163], filed by Debtor.

For the reasons that follow, the Court will enter an indicative ruling stating that it would grant the Motion to Reconsider if the United States District Court remands Debtor's appeal of the Sanctions Order for that purpose.

## I.    Background.

On October 23, 2025, Debtor filed a bare bones Voluntary Chapter 13 Petition [Dkt. No. 1]. After two deadline extensions, Debtor filed his original Bankruptcy Schedules A-J, Summary of Assets and Liabilities, and Statement of Financial Affairs [Dkt. No. 18] on November 28, 2025. In Schedule A/B, Debtor listed a tenancy by the entirety interest in 9032 Falls Chapel Way, Potomac, Maryland ("Property"). Debtor valued the Property as $1,159,300.00. Debtor also scheduled $1,114,919.52 in personal property. In Schedule D, Debtor listed a mortgage on the Property of $424,056.16. Additionally, Debtor listed claims secured against a grand piano and vehicle, bringing the total secured claims to $522,767.91. In Schedule E/F, Debtor listed $27,160.08 in priority claims and $58,519.62 in non-priority unsecured claims. Debtor's original Schedule I showed a combined monthly income of $0.00. In response to the question asking whether Debtor expected a change in income within the next year, Debtor provided:

> The Debtor received a one-time severance payment on October 17, 2025. Although this severance represented compensation through December 2025, it was paid as a single lump-sum amount and is not received on a recurring monthly basis. The Debtor currently resides in South Korea and is actively seeking new employment. Based on his experience and ongoing interviews, he anticipates securing new employment in the near future, with an estimated gross monthly income of approximately $16,000; however, no employment offer has been finalized yet. Although the *Debtor has no present monthly income*, he is able to make the proposed plan payments through his available liquid assets, including funds held in his bank and brokerage accounts. These reserves are sufficient to cover plan payments until employment is obtained.

Schedule I, Dkt. No. 18, p. 24 (emphasis added). Debtor's original Schedule J showed monthly expenses of $19,088.82. In response to the question regarding expected changes in expenses in the next year, Debtor provided:

> Although D's adult children do not reside with him, they remain his financial dependents. D currently resides in S. Korea, where he had previously been employed. While not presently working, he continues to provide financial support to his family in the US from his available savings and liquid assets. D's financial circumstances may change within the next 3 to 5 months depending on the outcome of the pending divorce proceedings, which involve issues of support and distribution of marital assets. . .
>
> The Debtor is currently paying COBRA health-insurance premiums for his spouse and two children in the approximate amount of $2,200 per month (medical, dental, and vision). This COBRA coverage expires next month and will no longer be due thereafter. Because the expense will not continue post-petition, it is not included in the ongoing monthly expenses listed on Schedule J.

Schedule J, Dkt. No. 18, p. 27.

On November 28, 2025, Debtor filed his Original Chapter 13 Plan [Dkt. No. 23] ("Original Plan"). The Original Plan provided for plan payments totaling $111,724.82. The Original Plan provided for curing the arrears on the Mortgage, surrender of the grand piano, and adequate protection payments on a vehicle. The Original Plan made no mention of selling the Property.

On December 5, 2025, Timothy P. Branigan, Chapter 13 Trustee, filed a Motion to Dismiss Chapter 13 Case [Dkt. No. 24] based on Debtor having no regular income as testified to in the schedules and at the meeting of creditors. On December 8, 2025, Debtor filed an Opposition to the Motion to Dismiss [Dkt. No. 25], arguing that Debtor could fund a 100% Chapter 13 Plan through non-wage assets, and making no mention of the severance payment received pre-petition. On December 12, 2025, Debtor filed Amended Schedules A/B and C, increasing scheduled personal property to $1,294,719.52. On December 22, 2025, Ms. Jung filed a Joinder Supporting Trustee's Motion to Dismiss Chapter 13 Case [kt. No. 32], requesting only dismissal of the case. On December 24, 2025, Debtor filed an Opposition to Ms. Jung's Joinder [Dkt. No. 34], again arguing that he could fund a plan with non-wage assets, and making no mention of the severance payment received pre-petition. On December 26, 2025, Ms. Jung filed a Reply to Debtor's Opposition [Dkt.

3

No. 35], again only requesting dismissal. On December 28, 2025, Debtor filed a Sur-Reply [Dkt. No. 37], again making no mention of the pre-petition severance payment.

On January 22, 2026, Debtor filed Amended Schedules I and J [Dkt. No. 43]. Debtor's Amended Schedule I included $1,000.00 a month in income identified as "temporary voluntary support" from Debtor's sibling. In response to the question asking whether Debtor expected a change in income within the next year, Debtor provided:

> The Debtor is currently unemployed and actively seeking employment. No offer has been extended or accepted as of the date of this filing. During this interim period, the Debtor's Chapter 13 plan payment is funded through temporary family support as reflected on Schedule I. This statement is provided for informational purposes only and does not reflect earned income.

Amended Schedule I, Dkt. No. 43, p. 4. In his Amended Schedule J, Debtor removed the $3,946.96 monthly mortgage payment and housing expenses for the Property, which was the marital home and is now Ms. Jung's residence. Debtor placed a $1,000.00 a month cap in support to Ms. Jung. In total, Debtor's monthly expenses in Amended Schedule J were $12,090.41. In response to the question regarding expected changes in expenses in the next year, Debtor provided:

> Spousal support of $1,000 - This amount reflects the outer limit of what the Debtor could reasonably contribute even under optimistic re-employment assumptions, while preserving basic self-support and avoiding financial collapse.

Amended Schedule J, Dkt. No. 43, p. 6.

On February 8, 2026, Debtor filed his Amended Chapter 13 Plan [Dkt. No. 74] ("First Amended Plan"). In the summary attached to the First Amended Plan, Debtor stated that he has no employment income, and that the plan would be funded through asset liquidation by the Trustee. The First Amended Plan provided that it would primarily be funded through the Trustee's sale of the Property. In addition, Debtor would make $1,000.00 monthly payments until the Property is sold.

4

On February 10, 2026, Ms. Jung filed an Objection to Confirmation of the First Amended Plan [Dkt. No. 76]. Ms. Jung argued that neither Debtor nor the Trustee has statutory authority to sell the Property and that the First Amended Plan was not feasible and was offered in bad faith. Based thereon, Ms. Jung requested denial of confirmation, dismissal, an award of attorney fees, and a 180-day bar to refiling.

On February 12, 2026, the parties appeared before the Court for a hearing on the Spouse's Schedule C [Dkt. No. 30], filed by Ms. Jung, and the Objection to Spouse's Schedule C [Dkt. No. 38], filed by Debtor, and the Response [Dkt. No. 42], filed by Ms. Jung, and the Supplemental Opposition [Dkt. No. 77], filed by Debtor. After hearing the arguments of the parties and before sustaining Debtor's objection, the Court stated that it wished to address Debtor's First Amended Plan. The Court informed Debtor's that he "has no rights under 363(h)" to sell the Property. When Debtor's counsel pushed back and stated that he intended "to file motions and go through the trustee sale," the Court informed Debtor's counsel that a sale under 363(h) required an adversary proceeding, but that "[i]t's not going to happen in [Chapter] 13." The Court further stated that "it gives the Court great concern with regard to Mr. Oh's good faith, in proceeding with this bankruptcy case, if he is attempting to sell the residence where his children live out from under the children and the spouse. I mean, not that I think he can do it, but I think we have some concerns here." Finally, the Court stated that the First Amended Plan, "as filed, doesn't comply with the law. . . ."

On February 17, 2026, Debtor filed Second Amended Schedules I and J [Dkt. No. 81]. In Debtor's Second Amended Schedule I, the amount of support Debtor received from his sibling was increased to $2,000.00 a month. In Debtor's Second Amended Schedule J, Debtor noted that

5

he has resumed making the monthly mortgage payment but did not include that amount in his monthly expenses because he intends to sell the house through his plan.

On February 18, 2026, Ms. Jung filed a Memorandum of Law in Support of Dismissal of Chapter 13 Case with Prejudice [Dkt. No. 83]. Therein, Ms. Jung expounds upon her argument that Debtor is acting in bad faith and restates her request for dismissal with prejudice and an award of attorney's fees.

On February 19, 2026, Debtor filed a second Amended Chapter 13 Plan [Dkt. No. 85] ("Second Amended Plan"). The Second Amended Plan restores regular monthly payments of varying amounts totaling $189,000.00. The Second Amended Plan retained the nonstandard provision providing for the Trustee's sale of the Property, with an estimated $300,000.00 in sale proceeds to be included in funding the plan.

On February 23, 2026, Debtor filed a Response to Ms. Jung's Memorandum [Dkt. No. 90]. Debtor disputed Ms. Jung's assertion that Debtor is acting in bad faith. Debtor asked the Court to deny Ms. Jung's requests for dismissal with prejudice and for an award of attorney's fees. Debtor did not request a hearing or assert that the Court should not consider Ms. Jung's requests for dismissal with prejudice or for an award of attorney fees at the February 24, 2026, hearing.

On February 24, 2026, the parties appeared before the Court for a hearing on confirmation of the Second Amended Plan, the Trustee's Motion to Dismiss, and all responses, oppositions, and joinders related thereto. The hearing consisted entirely of arguments from counsel; no party attempted to present evidence or testimony or requested an opportunity to do so. Counsel for the Trustee reiterated the Trustee's position that Debtor is ineligible to be in Chapter 13 due to lack of regular income. He further stated that the Trustee does not dispute Ms. Jung's position that the Trustee does not have authority to sell the Property. Trustee's counsel also stated that the Trustee

6

is not interested in selling the Property. At the conclusion of the hearing, the Court issued an oral ruling stating that Debtor's repeated proposal of an unconfirmable plan despite warning from the Court led the Court to "conclude that Mr. Oh was simply trying to delay the process and mess with the divorce situation." Accordingly, the Court granted the Trustee's Motion to Dismiss, imposed an 180-day bar to refiling, sanctioned Debtor, and awarded Ms. Jung her reasonable attorney fees. On February 27, 2025, the Court entered the Sanctions Order.

On March 2, 2026, Ms. Jung's attorney filed an Application for Compensation [Dkt. No. 95] related to the Sanctions Order's award of reasonable attorney fees. On March 12, 2026, Debtor filed a Notice of Appeal [Dkt. No. 103] for the Sanctions Order. On March 26, 2026, Debtor filed the Motion to Reconsider, wherein Debtor argues that there is no legal basis for the attorney fee award in the Sanctions Order, evidence of bad faith is lacking, no finding of bad faith was made by the Court, and that Debtor was denied due process. On April 22, 2026, prior to the hearing on the Application for Compensation, the Court and the parties agreed to resolve the issues raised in the Motion to Reconsider prior to the Court determining a dollar amount on the attorney fee award. Based thereon, the Court continued the hearing and set a briefing schedule on the Motion to Reconsider in the Order Concerning Matters Related to, or Arising from, the Sanctions Order [Dkt. No. 152].

On May 8, 2026, Ms. Jung filed her Response to the Motion to Reconsider. On May 22, 2026, Debtor filed his Reply. The following day, Debtor filed his First Correction to the Reply and, later that day, his Second Correction to the Reply. On June 3, 2026, Ms. Jung filed her Sur-Reply. Then, on June 18, 2026, Debtor filed his Rebuttal to the Sur-Reply. Thereafter, the Court took the matter under advisement.

## II.    Discussion.

"'As a general rule, the filing of an appeal confers jurisdiction on the [appellate court] and divests the [lower] court of its control over those aspects of the case involved in the appeal.'" *In re Creative Hairdressers, Inc.*, 639 B.R. 310, 314 (Bankr. D. Md. 2022) (*quoting Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 263 (4th Cir. 2011)). The issue before the Court in this matter, reconsideration of the Court's award of reasonable attorney fees to Ms. Jung, is directly at issue in Debtor's appeal. *See* Statement of Issues on Appeal [Dkt. No. 120]. Accordingly, the Court presently lacks jurisdiction to grant the relief requested in the Motion to Reconsider. Rule 8008(a) of the Federal Rules of Bankruptcy Procedure provides that where, as here, the bankruptcy court lacks jurisdiction to grant the relief requested in a motion due to a pending appeal, the bankruptcy court has the following options:

> (1) defer considering the motion;
> (2) deny the motion;
> (3) state that it would grant the motion if the court where the appeal is pending remands for that purpose; or
> (4) state that the motion raises a substantial issue.

Fed. R. Bankr. P. 8008(a).

This Court's docket has grown increasingly heavy due to an increased filing rate as well as an increase in hotly contested disputes between debtors and creditors. To manage this heavy docket and ensure that cases progress appropriately or are dismissed within a reasonable time, the Court takes great effort to provide expeditious resolution of the matters presented before it. This case, which is in large part a spillover from the pending divorce proceeding between Debtor and Ms. Jung, is certainly no exception. The number of docket entries in this case and the prodigious filings by Debtor and Ms. Jung are emblematic of the increased litigiousness mentioned above.

As Debtor points out, the February 24th hearing was not long. Debtor also correctly states that neither he nor Ms. Jung presented evidence at the hearing. However, Debtor is incorrect in

stating that the February 24th hearing was not an evidentiary hearing, or at least that it was intended to be an evidentiary hearing. As with all Chapter 13 confirmation hearings, the February 24th hearing was held via videoconference. However, videoconference hearings are no longer a novelty and many courts, including this Court, have well established and refined procedures and protocols for submission of evidence in videoconference hearings. *See* Protocol for Videoconference Hearings Before The Honorable Lori. S. Simpson, para VI, available at https://www.mdb.uscourts.gov/files/LSS%20Protocol%20for%20Videoconference%20Hearings%202024-11.pdf. Whether Debtor and Ms. Jung were unfamiliar with this Court's Videoconference Hearing Protocols or they believed the docket in this case provided sufficient evidence for their respective positions, the fact remains that no evidence was presented. With the benefit of hindsight and the parties' arguments presented in the numerous pleadings related to the Motion to Reconsider, the Court has determined that, while the docket in this case raises serious suspicion of Debtor's bad faith, it is insufficient to support a clear finding of bad faith.

While ordinarily parties must bear their own litigation expenses, bankruptcy courts may sanction bad faith or abusive behavior through the award of attorney's fees under either Fed. R. Bankr. P. 9011, 11 U.S.C. § 105(a), or the inherent authority of the court. Here, Ms. Jung twice requested an award of attorney's fees. First, on February 10, 2026, Ms. Jung included the request in her Objection to Confirmation of the First Amended Plan. Eight days later, she included the request in her Memorandum of Law in Support of Dismissal of Chapter 13 Case with Prejudice. While not explicitly clear at first reading, Ms. Jung's request for an attorney fee sanction award was based on the Court's inherent authority and Section 105(a). A request for sanctions under the court's inherent authority must be supported by clear and convincing evidence. *Keyes Law Firm, LLC v. Napoli Bern Ripka Shkolnik, LLP*, 2023 U.S. Dist. LEXIS 90396, at *15-17 (D. Md. May

9

22, 2023). The existence of bad faith is determined based on the totality of circumstances, including evidence of advice of counsel. *Sugar v. Burnett*, 130 F.4th 358, 376 (4th Cir. 2025).

The Court referenced two bases in support of its award for attorney fees: (1) Debtor's lack of eligibility to be a Debtor in Chapter 13; and (2) Debtor's repeated proposal of an unconfirmable Chapter 13 Plan including a sale under Section 363(h). Though not the focus herein, the Court reiterates that Debtor lacked eligibility to be a Chapter 13 Debtor because he did not have regular income at anytime between the petition date and February 24, 2026. 11 U.S.C. § 109(g). Further, Debtor's First and Second Amended Plans were facially unconfirmable because they sought to force a sale of the Property under Section 363(h), which Debtor lacks standing to do. *Wrublik v. Wrublik*, 312 B.R. 284, 287 (Bankr. D. Md. 2004). This much is clearly established from the docket. Further, in light of the Court's February 12th warning to Debtor's counsel, the docket and record in this case present a strong suspicion of bad faith on behalf of Debtor. However, with the benefit of hindsight, the Court believes that Ms. Jung failed to satisfy her burden to clearly and convincingly establish that Debtor acted in bad faith either in filing the petition or in filing unconfirmable plans.

III.    **Conclusion.**

Based on the foregoing, pursuant to Fed. R. Bankr. P. 8008(a)(3), the Court states that it would grant the Motion to Reconsider and vacate the award of attorney's fees if the United States District Court for the District of Maryland remands for that purpose.

cc:     Debtor
        Debtor's Counsel – Weon G. Kim
        Ms. Jung – Marc Robert Kivitz, Diana C. Valle
        Chapter 13 Trustee – Timothy P. Branigan
        U.S. Trustee

**End of Order**